Thomas J. **ALBERT** et al.

v.

The **INHABITANTS OF the TOWN OF WINSLOW and Coburn Classical Institute.**

Supreme Judicial Court of Maine.

Jan. 31, 1972.

Jerome G. Daviau, Waterville, for plaintiffs.

Wathen & Wathen by Daniel E. Wathen, Augusta, Ronald M. Roy, Winslow, for Town of Winslow.

Marden, Dubord, Bernier & Chandler by Bruce W. Chandler, Waterville, for Coburn Classical Institute.

Before DuFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ., dissenting.

WEATHERBEE, Justice.

This case is on report on the pleadings, stipulations and such parts of the exhibits as are found to be relevant.

During the school year 1965–66 the three Plaintiffs, residents of Winslow, were students at Coburn Classical Institute in Waterville. At that time the Plaintiffs were enrolled in second year courses in Latin, a subject not taught at the Winslow public high school, and they had elected to attend the Institute pursuant to 20 M.R.S.A. §§ 1291 and 1292 which make provision for the payment of tuition for such education through the Commissioner of Education by the use of apportioned funds of the administrative unit where the student resides, if the tuition is unpaid on August 15.[1]

---

1. 20 M.R.S.A. § 1291 at that time provided: " . . . Any youth whose parent or guardian maintains a home for his family in an administrative unit that maintains, or contracts for school privileges in, an approved secondary school, and who has met the qualifications for admission to the high school in his town, may elect to attend some other approved secondary school in the State to which he may gain admission for the purpose of studying or of completing at least a 2-year course in mathematics, science or a foreign language not offered or contracted for by the administrative unit of his legal residence. Any pupil for whom tuition payment has been denied by the superintending school committee may appeal to the Commissioner of Education for a decision and any payment found to be rightly due shall be adjusted as provided for such cases in section 1292. . . .
. . . . . ."

The town at first refused to pay the bill, apparently contending that the Plaintiffs were not among the class of students entitled to the benefits of section 1291.

The parents appealed to the Commissioner who heard the dispute on April 25, 1966 and ruled that the Town of Winslow was responsible for the tuition payments for the 1965–66 education of these students under section 1291. On May 11, 1966 the town declined to pay the full year's tuition until the year had been completed and until it had received ·from the Institute the students' grades but offered to pay tuition for the first semester upon receipt of a new bill and the students' grades for the first semester's work.[2] Apparently, nothing resulted from this proposal and on June 9, 1966 the Institute sent the town the students' final grades for the entire school year which were satisfactory. The town still did not pay.

On May 17, 1966 the Commissioner had written one of the parents telling him that "if the tuition rightfully found to be due is not paid by September the Commissioner is authorized to deduct the amount from the Winslow educational subsidy and pay it to the Institute".

On August 8, 1966 that parent wrote the Commissioner telling him that the tuition had still not been paid and on August 9, 1966 the Commissioner replied:

"The Coburn tuition claim against the Town of Winslow is on file here and if it is not paid by Winslow it will be necessary to adjust it when the final subsidy payment is made in December.

The tuition reports are not due here until early September and consequently, no adjustment can be made until later in the year."

On August 29, 1966 the Institute reported formally to the Commissioner that no tuition was due it from any school unit.

The reason for this was that the parents at some undisclosed time—but apparently soon after receiving the Commissioner's August 9 letter—had proceeded to pay the tuition themselves.

The Commissioner then informed the parents that as no tuition had been "due" the Institute on August 15, he had no authority to deduct any sums from the Winslow subsidy.

The students, Plaintiffs, brought this action against the Town of Winslow and the Institute asking judgment for the sums of money their parents had paid for their year's tuition. The Defendants moved to dismiss the complaint.

The parties agreeing, a Justice of the Superior·Court ordered the matter reported to this Court for such final decision as the rights of the parties may require, on the pleadings, stipulations and various exhibits.

The issue of whether or not the Plaintiff children have standing to prosecute this action against their town and the Institute proves determinative of the case. This Court faced an almost identical question on very similar facts in Goodwin v. Inhabitants of Charleston, 100 Me. 549, 62 A. 606 (1905). There, the predecessor statute of the one presently under examination pro-

---

In 1965, 20 M.R.S.A. § 1292 read in part:
" .     .     .     .     .

When pupils are sent from one administrative unit to an approved secondary school in another, if any accounts for tuition of such pupils are not paid on or before August 15th of that year, the commissioner shall pay such accounts, or so much thereof as he shall find to be rightly due, to the treasurer of the receiving administrative unit, academy, institute or seminary at the next regular

annual apportionment, together with interest on such accounts at the rate of 6% annually, computed from said August 15th, and the commissioner shall charge any such payment against the apportioned fund of the sending administrative unit.
.     .     .     .     . "

2. 20 M.R.S.A. § 1291. " .   .   .   Such free tuition privilege shall continue only so long as said youth shall maintain a satisfactory standard of deportment and scholarship . . . "

vided that a young person residing in a town which does not support a free high school giving a 4-year course may attend some other such school and that the town of his residence shall pay his tuition. There, the child chose to attend Higgins Classical Institute, the Defendant town refused to pay the tuition, the child's father paid it and the child, by his next friend, sued the town to recover the money paid by his father. This Court said:

" . . . The only question now presented for determination is whether this action brought in the name of the pupil himself, by his next friend, can be maintained to recover from the town the amount of the tuition voluntarily paid to the Institute by his father, and our conclusion is that the situation disclosed by the evidence constitutes no legal basis for the plaintiff's action. He was a minor and never undertook to make any contract in his own behalf respecting his tuition at the Institute. He personally incurred no legal indebtedness, made no expenditure, sustained no loss, and acquired no right of action. . . . "

While *Goodwin* was an action at law, we do not consider that the principle it announced is made any less controlling by the intervention of our modern merger of law and equity. Here, as in *Goodwin*, the parents paid the tuition and if anyone is entitled to reimbursement it is the parents. We know of no equitable principle which would give standing to recover from either town or school to the children who were not deprived of any education and as far as the record reveals, did not sustain any loss.

Our conclusion that the Plaintiffs have no common law right to recover money which their parents have paid for their tuition leads us next to the Plaintiffs' contention that the statute creates such a right.

By 1965–66 the statute which formed the basis of the action in *Goodwin* had become expanded and more detailed in its definition of the class of students whom it entitles to free tuition away from home. The statute also presented a formula for the determination of proper tuition charges and it created an administrative remedy to secure payment if the town failed to pay.

Under the statute the Commissioner is authorized to pay to the Institute from Winslow's share of the 1966–67 school subsidy fund any tuition due from Winslow which was still unpaid on August 15, 1966. This is the sole remedy specifically created by the statute and the payment in full to the Institute by the parents prevented its being put into operation.

The primary purpose of the statute is, of course, to enable the children to obtain the adequate education which their town is obligated to furnish them. The secondary purpose is to establish an orderly and fair procedure under which the cost of this education can be determined, and under which it can be demanded and obtained by the school furnishing the education.

We are not here called upon to decide whether the right to have such free education which the statute gives children can be enforced only by the use of the remedy created by the statute. But here, as in *Goodwin*, the Plaintiffs have received the year's education to which they were entitled and the costs have been paid. We find nothing in the statute which gives the students a right to receive from either school or town the tuition which their parents have paid.

Although we can understand the personal considerations which may have motivated the parents to pay the tuitions rather than leave them unpaid with another school year so imminent, the standing of the present Plaintiffs is the determinative issue in this case.

Complaint dismissed.

All Justices concurring.